IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RICKIE LEE CLOY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 12-00718-KD-N |
| | ) | |
| TRACY BOUTWELL, HUEY "HOSS" | ) | |
| MACK, and MATTHEW SEYMORE, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rickie Lee Cloy ("Cloy"), proceeding *pro se* and *in forma pauperis* (*see* Doc. 6), has brought this action asserting claims under 42 U.S.C. § 1983.[1] Pursuant to SD ALA Local Rule 72.2(c)(4), this matter has been referred to the undersigned United States Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and Federal Rule of Civil Procedure 72(b).

### I.    Procedural History

Cloy's second amended complaint, dated June 11, 2013 (Doc. 21), as supplemented (Doc. 25), is the operative pleading in this action (*see* Doc. 18; Doc. 28 at 1; Doc. 32 at 1; Doc. 38 at 1)[2] and asserts claims against Defendants Huey "Hoss"

---

[1] Cloy was a prisoner in the custody of the Alabama Department of Corrections when he initiated this lawsuit. However, Cloy has since been released from custody. *See* (Doc. 50; Doc. 21 at 9 (stating Cloy's "expected end of sentence" date to be May 17, 2014)); http://www.doc.state.al.us/InmateInfo.aspx (last visited Nov. 20, 2014).

[2] In ordering Cloy to file a second amended complaint, the undersigned expressly informed him that his "second amended complaint will supercede [his] prior complaints (docs. 1,4)" and, "therefore,[ he] shall not rely on them." (Doc. 18 at 1).   *See also Pintando v. Miami-*

Mack, Sheriff of Baldwin County, Alabama ("Sheriff Mack"); Matthew Seymore, a Baldwin County Assistant District Attorney ("Seymore"); and Tracey Boutwell, a staff member of the Baldwin County Circuit Court Clerk's Office ("Boutwell").[3]  The causes of action in the operative complaint arise from events occurring in 2012 in Baldwin County, Alabama, in which Cloy was arrested and set to prison for a probation violation.

Sheriff Mack was provided notice of this lawsuit (*see* Doc. 34) and has filed a Special Report (Doc. 40) and Answer (Doc. 41), which have been converted to a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 by order of the undersigned (Doc. 46).  Cloy filed a response (Doc. 44) to the Special Report.

Three attempts were made to send notice of this lawsuit to Seymore and Boutwell.  (*See* Docs. 28, 29, 31, 32, 33, 35, 38, 39, 45).  All three attempts to provide notice to Seymore have been unsuccessful, with the Baldwin County District Attorney's Office informing the Court that he is no longer employed there (*see* Doc. 45).   Though the third notice sent to Boutwell (Doc. 39) has not been returned as undeliverable, as the previous two (Docs. 31, 35) were, Boutwell "has not

---

*Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (per curiam) ("As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.' " (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted)); *Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint."). Accordingly, any claims asserted in Cloy's previous complaints but not reasserted in the operative complaint are deemed abandoned.

[3] Boutwell was initially identified as "Bouckuey" in this action, but her name has since been corrected.  (*See* Doc. 38 at 1 n.1).

2

acknowledged receipt of Cloy's complaint or waived service of summons."  (Doc. 46 at 2 n.1).

## II.   <u>Summary Judgment Standards</u>

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L .Ed. 2d 265 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...."   However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Federal Rule of Civil Procedure 56(e) further provides:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *See Stabler v. Fla. Van Lines, Inc.*, Civil Action No. 11–0103–WS–N, 2012 WL 32660, at *5 (S.D. Ala. Jan.6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when "a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

4

that party.... If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. CA 09–745–C, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011). " 'An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.' " *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted)).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers…" *E.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotations omitted). Nevertheless, "a court may not 'serve as de facto counsel for a party' or 'rewrite an otherwise deficient pleading in order to sustain an action.' " *Muhammad v. Bethel*, 430 F. App'x 750, 752 (11th Cir. 2011) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds*, *see Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)). Additionally, "[t]here is no burden upon the district court to distill every potential

5

argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) (internal citation omitted).  *Accord, e.g.*, *Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014).

## III.   Determination of Facts[4]

On May 13, 2011, in the criminal action *State of Alabama v. Cloy Ricky Lee*, Case # CC 2007 000958.00, Baldwin County Circuit Judge James Reid issued a writ for Cloy's arrest, or bench warrant, for the purpose of conducting probation revocation proceedings.  (Doc. 40-1 at 2).  On February 17, 2012, Boutwell, on behalf of the Baldwin County Circuit Court Clerk, issued writs of arrest for Cloy upon the return of an indictment against Cloy by the Grand Jury of Baldwin County charging Burglary 1st Degree (Case # GJ 2012 020360.00) and Robbery 1st (Case # GJ 2012 020361.00) with bond set at $50,000.00.  (Doc. 40-2 at 4-5).  Cloy was arrested by the Gulf Coast Regional Fugitive Task Force on May 2, 2012, pursuant to the two February 17, 2012 warrants and the probation violation (*id.* at 6; Doc. 40-3 at 3, ¶ 4) and was booked into the Baldwin County Corrections Center the next day (Doc. 40-2 at 7; Doc. 40-3 at 3, ¶ 5).   After Cloy's booking, Judge Reid's bench warrant was executed by a member of Sheriff Mack's staff that same day.  (Doc. 40-1 at 3; Doc. 40-3 at 3, ¶ 7).  Confirmation was also received that day that Cloy had active arrest

---

[4] The undersigned has made this "determination of facts" by "review[ing] the record, and all its inferences, in the light most favorable to [Cloy,] the nonmoving party."  *E.g., Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).

warrants issued by the police departments of Gulf Shores and Foley, Alabama. (Doc. 40-2 at 8-9).

Judge Reid's executed bench warrant was filed with Baldwin County Circuit Court Clerk on May 7, 2012.  (Doc. 40-1 at 3).  On May 9, 2012, Judge Reid set Cloy's case for a probation revocation hearing on May 24, 2014.  (Doc. 40-1 at 4).  On May 17, 2012, Judge Reid set Cloy's bond at $20,000, "to be approved by the Sheriff."  (Doc. 40-2 at 10).  On May 31, 2012, Judge Reid entered an order (dated May 24, 2012) in Cloy's criminal case stating as follows:

> The defendant and counsel and counsel for the State of Alabama appeared in open court on a probation hearing in the above captioned case.  The defendant having been charged with violating the terms and conditions of his probation, to wit:
>
> 1)   Failure to Report;
> 2)   Failure to Pay Supervision Fees;
> 3)   Failure to Pay Court Ordered Monies;
>
> and defendant having confessed to the charges, the Court adjudicated the defendant guilty of violating the terms and conditions of probation and ORDERS that the defendant's probation be revoked.  It is FURTHER ORDERED that the defendant be remanded to eh [sic] Alabama Department of Corrections to serve the balance of his sentence.

(Doc. 40-1 at 5).

That order also taxed costs of the proceedings against Cloy and ordered him to reimburse the State of Alabama $400.00 for his appointed counsel.  (*Id.*).

Cloy filed *pro se* a notice of appeal of his probation revocation (*id.* at 6), was appointed counsel on appeal, and was denied an appeal bond (*id.* at 7).  However, Cloy later filed *pro se* a motion to voluntarily dismiss his appeal, stating he

"believe[d] it would be in [his] best intress [sic] to E.O.S. [his] sentence." (*Id.* at 17). Pursuant to Cloy's motion (received by the court on June 20, 2012), the Alabama Court of Criminal Appeals dismissed his appeal and entered its Certificate of Judgment on July 9, 2012. (*Id.* at 19-20).

On July 5, 2012, Cloy was released from the Baldwin County Corrections Center into the custody of the Alabama Department of Corrections. (Doc. 40-2 at 11-13; Doc. 40-3 at 3, ¶ 5). In November 1, 2012, Cloy filed *pro se* two letter motions with the Baldwin County Circuit Court to be allowed to participate in the "Community Corrections Program – Back in Diversion." (Doc. 40-1 at 21-25). The circuit court denied both motions on December 12, 2012. (*Id.* at 26-27).

In his operative complaint (Doc. 21),[5] Cloy "admits his probation had been violated before the arrest, for failure to report which is a technical violation…" However, he claims he "was falsely arrested[;]" that he "was sent back to prison before ever going to court[;]" that "evidence was manufactured against" him; that "the Sheriff and district attorney provided no arrest warrant, no indictment[;]" and that "the state provided absolutely no evidence to file a charge[,]" "falsified

---

[5] Cloy's operative complaint is signed and dated by him and states: "By my signature below, I swear or affirm under penalty of perjury that the facts set out in this complaint are true and correct." (Doc. 21 at 10). Though the Complaint is not notarized, it is in substantial compliance with 28 U.S.C. § 1746 and thus constitutes an unsworn declaration under penalty of perjury that may be considered as evidence for purposes of summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form."); *Moulds v. Bullard*, 345 F. App'x 387, 391 (11th Cir. 2009) (*per curiam*) ("In another prisoner's § 1983 case, we held that specific facts pled in a sworn complaint must be considered in opposition to summary judgment. *Perry v. Thompson,* 786 F.2d 1093, 1095 (11th Cir. 1986). However, sworn statements must be made on personal knowledge, and statements based in part upon information and belief cannot raise a genuine issue of fact. *Pace v. Capobianco,* 283 F.3d 1275, 1278 (11th Cir. 2002) (citing Fed. R. Civ. P. 56(e)).").

documents to get an arrest[,]" and "did not charge [Cloy] with any charge."  This caused him to be "placed in a level (4) high level security facility…for absolutely no reason" and to be "placed under a $200,000.00 bond…"  Stated another way, Cloy claims "the State falsely accuse [sic] [him] of a serious felony and confined [him] to a strick [sic] holding falcility [sic] for absolutely no reason…"  (*Id.* at 4-5).  He also claims:

> Had these charges not been brought against [Cloy] treatment would not have been so harsh and he very well may have been able to make a probation bond or a 90 day sanction because the state charged [Cloy] with a harsh charge and refuse to drop it until several months later, th[e] judge who ruled on this case and the probation officer refuse [sic] to sanction [Cloy] to a lesser violation penelity [sic].

> There was absolutely no evidence or witness to say [Cloy] had committed a crime.  There was only a had [sic] written letter from the Foley Police Department threating [Cloy] stating they were going to give him 50 years, and he had stole drugs from other drug dealers as well as other trobling statement [sic], which [Cloy] has in his possession as well as served other witnesses who [illegible] will to testify that Police Department had indeeded [sic] threating [sic] [Cloy].

(*Id.* at 6).

## IV.   <u>Causes of Action</u>

In his operative complaint, Cloy asserts claims for false arrest and false imprisonment under 42 U.S.C. § 1983.[6]  (*See generally* Doc. 21).[7]  More specifically,

---

[6] "Section 1983, which derives from § 1 of the Civil Rights Act of 1871, 17 Stat. 13, creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States.  Under the terms of the statute, ' "[e]very person" who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages.' *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (citing 42 U.S.C. § 1983)."  *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501-02 (2012).

Cloy claims Seymore, in his capacity as assistant district attorney, "falsified evidence against" Cloy, and that there was "no witness," "no indictment," and "no case." (Doc. 21 at 8). He also claims that Sheriff Mack "falsified evidence" and "arrested [Cloy] without evidence…" (Doc. 21 at 8). No specific claim is made against Boutwell, other than that she violated Cloy's 5th- and 14th-Amendment constitutional rights in some way. (*Id.*).

Cloy's response (Doc. 44) to Sheriff Mack's Special Report provides some clarification regarding his claims. As in his operative complaint, *see supra*, Cloy admits "that he had indeed violated the terms of his probation." (*Id.* at 1). Cloy further states that he "is only filing a claim for (unlawful imprisonment) on the charges of Robbery 1st & Burgulary [sic] 1st in which he was charged" and that "the District Attorney has already admitted to the (United States Courts for the Southern District of Alabama Southern Division) that they did not have enough evidence to charge [Cloy] but yet they did so." (*Id.*). As to Sheriff Mack and Boutwell, Cloy says he "only stated that [they] signed a worthless instrument." (*Id.*).

---

[7] Cloy's operative complaint (Docs. 21, 25) is the sole source of any of his claims in this action. Claims raised for the first time in Cloy's summary judgment briefing will not be addressed. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment."). Moreover, "[l]iberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint." *Id. See also Al-Amin v. Donald*, 165 F. App'x 733, 740 (11th Cir. 2006) (*per curiam*) ("*Pro se* pleadings are interpreted liberally, but even a *pro se* plaintiff must allege some factual basis for his claim. *See Jones v. Ray,* 279 F.3d 944, 946-47 (11th Cir. 2001). A defendant is not required to 'infer all possible claims that could arise out of the facts set forth in the complaint.' *Gilmour v. Gates, McDonald, & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004).").

Upon consideration, the undersigned finds that Cloy is not challenging the propriety of his arrest and confinement on the basis of his probation violation. Rather, his claims in this action are based on the propriety of the Burglary 1st and Robbery 1st charges, and the resulting February 17, 2012 arrest warrants issued by the Baldwin County Circuit Clerk's Office based on those charges. (*See, e.g.*, Doc. 21 at 4 ("On or about May 1st 2012 petitioner was falsely arrested and charged with the offense charge of Robbery 1st and Burglary 1st...").  Cloy claims that there was no witness or other evidence to support these charges.  Instead, he claims the "state falsified documents to get an arrest..." (*Id.* at 5).

Cloy contends that, had the state simply held him on "a probation violation and proceeded to process that case[,]" he "very well may have been able to make a probation bond or a 90 day sanction..." (*Id.* at 5-6).  However, because the prosecutor allegedly issued trumped-up and false felony charges against Cloy, in addition to his probation violation, Cloy claims this caused him to be placed under an "outrageous" "$200,000.00 bond" and to be held in "a level (4) high level security facility"/"strick [sic] holding facility for absolutely no-reason..." (*Id.* at 5). Moreover, the additional, false felony charges allegedly resulted in Judge Reid and Cloy's probation officer "refus[ing] to sanction [Cloy] to a lesser violation penelity [sic]." (*Id.* at 6).

In sum, the undersigned finds Cloy's claims are based on the following circumstances:

- After Judge Reid issued his bench warrant for Cloy on Cloy's probation violation, the Defendants falsely obtained Robbery 1st and Burglary 1st charges against Cloy from the Baldwin County Grand Jury and had the February 17, 2012 arrest warrants issued based on these charges.

- Once Cloy was arrested, the false charges of Robbery 1st and Burglary 1st reduced the chance of Cloy being released while awaiting disposition of his probation violation and resulted in Cloy being detained on a large bond in a holding facility.

- Cloy received a harsher penalty on his probation violation because of the then-pending Robbery 1st and Burglary 1st charges.

Though Cloy's complaint cites the Fifth and Fourteenth Amendments in asserting claims for false arrest and imprisonment, the Eleventh Circuit has held that where, as here, a plaintiff is arrested pursuant to a warrant, the plaintiff's § 1983 claim is one for malicious prosecution rather than false arrest or false imprisonment. *See Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996) ("Here, Whiting says that Defendants applied for and obtained an arrest warrant and— based on the warrant—caused him to be unreasonably 'seized' in 1988. He says also he was unlawfully arrested in February 1989. Obtaining an arrest warrant is one of the initial steps of a criminal prosecution. Under these circumstances (that is, where seizures are pursuant to legal process), we agree with those circuits that say the common law tort most closely analogous to this situation is that of malicious prosecution." (some quotation marks omitted)); *Carter v. Gore*, 557 F. App'x 904, 906

(11th Cir. 2014) (per curiam) ("The district court dismissed Carter's claim in part because if Carter's 'arrest occurred pursuant to an arrest warrant, then he cannot state a viable § 1983 claim for false arrest or false imprisonment.' Instead, the district court held that Carter could only make out a claim for malicious prosecution, which is the constitutional tort available to people who have been wrongfully arrested pursuant to legal process...Given that Carter was arrested pursuant to a warrant, the district court properly concluded that Carter's only available claim against [police officer ]Gore under § 1983 was for malicious prosecution. In *Heck v. Humphrey*, the Supreme Court distinguished false arrest from malicious prosecution, stating, 'unlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits damages for confinement imposed pursuant to legal process.' 512 U.S. 477, 484, 114 S. Ct. 2364, 2371, 129 L. Ed. 2d 383 (1994).  The issuance of a warrant—even an invalid one as Carter alleges was issued here—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest." (citing, *inter alia*, *Whiting*)).  "This Circuit 'has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983.' "  *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).  "To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution;

*and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Id.*

As such, construing the allegations in Cloy's *pro se* pleadings liberally, the undersigned finds that Cloy's claims in this action are for malicious prosecution, rather than false imprisonment, under § 1983. Moreover, because Cloy does not specify in what capacit(ies) he is suing the Defendants, the undersigned will presume that each is being sued in both his or her individual and official capacities.[8]

## V.   Analysis

### a.   Official Capacity Claims

With some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought."

---

[8] The Supreme Court has described this distinction as follows:

> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law. When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official-capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment. While not exhaustive, this list illustrates the basic distinction between personal- and official-capacity actions.

*Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (internal citations, quotations, and footnotes omitted).

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted).  "[S]tate officials sued in their official capacity are also protected by the amendment."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Indeed,

> [w]hen a state official is made a defendant in a suit, whether it is nominally brought against him in his official or individual capacity, a court must determine the real, substantial party in interest. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984). If it is the State, the official may assert the defense of Eleventh Amendment sovereign immunity. *See id.* at 101–02, 104 S. Ct. at 908–09. "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* at 101 n.11, 104 S. Ct. at 908 n. 11 (internal quotation and citation omitted).

*Id.* at n.3.

Alternatively, "[s]tates … no longer need to rely exclusively on eleventh amendment immunity to avoid liability … in section 1983 cases.  In *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court held that states … are not 'persons' subject to liability under 42 U.S.C. § 1983."  *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).  Moreover, "[s]uing individuals in their official capacities is 'another way of pleading an action against an entity of which an officer is an agent.' "  *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (quoting *Graham*, 473 U.S. at 165).  As such, "[a] state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable…"  *Id.* (citing *Will*, 491 U.S. at 71).   The analysis for

determining whether a state official is covered by eleventh amendment immunity is the same as that for applying *Will v. Michigan Department of State Police* – courts consider the laws of the state.  *Carr*, 916 F.2d at 1525 & n.4.

Sheriff Mack asserts that he is entitled to Eleventh Amendment immunity (*see* Doc. 41 at 2), and the Eleventh Circuit has held "that the eleventh amendment bar[s] a section 1983 lawsuit against an Alabama sheriff in his official capacity." *Carr*, 916 F.2d at 1525 (citing *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989)). Alabama district attorneys' offices have also been held to be state agencies enjoying Eleventh Amendment immunity.  *See Garrett v. Talladega Cnty. Drug & Violent Crime Task Force*, 983 F. Supp. 2d 1369, 1376 (N.D. Ala. 2013) ("All District Attorney's offices are deemed to be agencies of the State of Alabama. *Hooks v. Hitt,* 539 So. 2d 157, 159 (Ala. 1988) (holding that the district attorneys and their employees are 'state employees whose salaries are funded by the state') (citing Ala. Code § 12–7–182 (1975)); *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 790, 117 S. Ct. 1734, 1739, 138 L. Ed. 2d 1 (1997) (citing *Hooks* and observing that an Alabama district attorney is a state official).").[9]

---

[9]    "Unlike most subject matter jurisdiction issues, which cannot be waived by the parties and must be raised by a court on its own initiative, the Eleventh Amendment does not automatically deprive a court of original jurisdiction…Thus, unlike other jurisdictional bars, federal courts are required to consider whether the Eleventh Amendment strips them of jurisdiction only if the state defendant insists that it does."  *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1257 (11th Cir. 2001).

Even though Seymore and Boutwell have not appeared in this action to raise the issue of Eleventh Amendment immunity, as Cloy is proceeding *in forma pauperis*, the undersigned finds it appropriate to address the issue *sua sponte*.  28 U.S.C. § 1915(e)(2)(iii) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that…the action or appeal…seeks monetary relief against a defendant who is immune from such relief.").

Finally, Alabama law indicates that circuit court clerks' offices are considered state agencies. *Compare* Ala. Code § 12-17-80 ("Clerks…of the circuit court shall be paid by the state…Employees in the offices of the circuit clerks…shall be paid by the state beginning October 1, 1977.  Employees in the offices of clerks…shall be paid by the county through September 30, 1977.") *and Stegmaier v. Trammell*, 597 F.2d 1027, 1037 (5th Cir. 1979 [10] ("Although elected under the Alabama Constitution, Circuit Clerks are employed and paid by the State of Alabama." (citing Ala. Code § 12-17-80)) *with Scott v. Estes*, 60 F. Supp. 2d 1260, 1272-73 (M.D. Ala. 1999) ("The Alabama Constitution, however, designates the Montgomery County Judge of Probate as a 'county officer' and requires the county to pay his salary. 1901 Ala. Const. amend. 4… And other provisions of the Alabama Constitution and the 1975 Alabama Code indicate that probate judges are not state officers, at least for purposes related to their compensation…Because the Montgomery County Judge of Probate is a county official, it logically follows that the chief clerk of the Montgomery County Probate Court, a subordinate of the probate judge, is also a county, and not a state, official.").  Circuit clerks have the power "[t]o appoint deputies, with full power to transact all business of such clerks," Ala. Code § 12-17-93(2), and "[a] deputy clerk is the alter ego of the clerk…" *Wyres v. State*, 32 Ala. App. 630, 632 (Ala. Ct. App. 1947).  Thus, Boutwell, in her official capacity, is also considered a state official.

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

The Supreme Court has recognized three limited exceptions to the rule barring § 1983 actions against[ a state or] state officials sued in their official capacity. The first exception is when a state has waived its Eleventh Amendment sovereign immunity and has consented to suit in federal court. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985). This exception does not apply here, however, because the State of Alabama has not waived its immunity to suit in § 1983 cases. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L.Ed.2d 1114 (1978). The Alabama Constitution explicitly states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.[11] The second exception is when Congress has properly abrogated sovereign immunity through its powers under the Fourteenth Amendment; however, such an abrogation has not occurred with respect to § 1983 claims. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 55–73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); *Carr*[ *v. City of Florence, Ala.*], 916 F.2d [1521,] 1525[ (11th Cir. 1990)]. Lastly, under the doctrine of *Ex parte Young,* the Eleventh Amendment does not bar § 1983 actions against state officials which seek prospective injunctive relief to end continuing violations of federal law. *See Ex parte Young,* 209 U.S. 123, 155–56, 28 S. Ct. 441, 52 L. Ed. 714 (1908); *see also Seminole Tribe of Fla.,* 517 U.S. at 73 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S. Ct. 423, 88 L.Ed.2d 371 (1985)); *Summit Med. Assoc. v. Pryor,* 180 F.3d 1326, 1336 (11th Cir. 1999). As noted in *Summit Medical,* "[b]ecause of the important interests of federalism and state sovereignty implicated by *Ex parte Young*... the doctrine is not without limitations." 180 F.3d at 1337. One limitation, which is relevant to this action, is that "the *Ex parte Young* doctrine applies

---

[11] *See also Haley v. Barbour Cnty.,* 885 So. 2d 783, 788 (Ala. 2004):

Section 14, Ala. Const. 1901, provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." This section affords the State and its agencies an "absolute" immunity from suit in any court. *Ex parte Mobile County Dep't of Human Res.,* 815 So. 2d 527, 530 (Ala. 2001) (stating that Ala. Const. 1901, § 14, confers on the State of Alabama and its agencies absolute immunity from suit in any court); *Ex parte Tuscaloosa County,* 796 So. 2d 1100, 1103 (Ala. 2000) ("Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state...."). Indeed, this Court has described § 14 as an "almost invincible" "wall" of immunity. *Alabama State Docks v. Saxon,* 631 So. 2d 943, 946 (Ala. 1994). This "wall of immunity" is "nearly impregnable," *Patterson v. Gladwin Corp.,* 835 So. 2d 137, 142 (Ala. 2002), and bars "almost every conceivable type of suit." *Hutchinson v. Board of Trustees of Univ. of Ala.,* 288 Ala. 20, 23, 256 So. 2d 281, 283 (1971).

only to ongoing and continuous violations of federal law." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 277–78, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986))…"[A] plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.*

*Jacoby v. Baldwin Cnty.*, Civil Action No. 12-0640-CG-N, 2014 WL 2641834, at *7 (S.D. Ala. June 13, 2014) (Granade, J., adopting the recommendation of Nelson, M.J.). *Accord Carr*, 916 F.2d at 1524-25 & n.2. *See also Edwards*, 49 F.3d at 1524 ("[A] state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought." (citing *Will*, 491 U.S. at 71 n.10)).

Cloy has not sought, nor shown entitlement to, prospective relief to end ongoing and continuing violations of federal law,[12] the *Young* exception does not apply in this action. Thus, Cloy's claims against the Defendants in their official capacities are due to be **DISMISSED**, as the Defendants in their official capacities are immune from suit on these claims under the Eleventh Amendment and are not "persons" subject to suit under § 1983.

### b.   Individual Capacity Claims

### 1.   Seymore and Boutwell

As explained above, Seymore has not been served with notice of this action, and it is unclear if Boutwell has.  Upon review of the record, the undersigned finds that *sua sponte* dismissal of these defendants under Federal Rule of Civil Procedure 4(m) for failure to serve would be inappropriate.  *See Richardson v. Johnson*, 598

---

[12] In addition to monetary relief (*see* Doc. 21 at 10; Doc. 25), Cloy has only requested that the Court "clear [his] name from false arrest" and "place penalties against" the Defendants, which only addresses past conduct and does not implicate prospective relief to end ongoing constitutional violations.

F.3d 734, 738-40 (11th Cir. 2010) (per curiam) ("[A]s long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes."). However, the undersigned finds that Cloy has failed to state a claim against either Seymore or Boutwell that would entitle him to relief. *See* 28 U.S.C. § 1915(e)(2)(iii); *Mitschell v. Donald*, 213 F. App'x 920, 922 (11th Cir. 2007) (per curiam) ("Under § 1915A, the district court shall review, as soon as possible, a prisoner's complaint in a civil action against a government entity. The district court must then dismiss the complaint if it is frivolous, malicious, or fails to state a claim upon which relief may be granted." (citing 28 U.S.C. § 1915A(a)-(b))).

As was explained to Cloy previously (*see* Doc. 46 at 2 n.2; Doc. 51 at 1 n.1),

> [t]raditional common-law immunities for prosecutors apply to civil cases brought under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 427–28, 96 S. Ct. 984, 993–94, 47 L. Ed. 2d 128 (1976). "[A]t common law, '[t]he general rule was, and is, that a prosecutor is absolutely immune from suit for malicious prosecution.' " *Malley v. Briggs,* 475 U.S. 335, 342, 106 S. Ct. 1092, 1097, 89 L. Ed. 2d 271 (1986) (quoting *Imbler,* 424 U.S. at 437, 96 S. Ct. at 998). In § 1983 actions, prosecutors have absolute immunity for all activities that are " 'intimately associated with the judicial phase of the criminal process.' " *Van de Kamp v. Goldstein,* 555 U.S. 335, 129 S. Ct. 855, 860, 172 L. Ed. 2d 706 (2009) (quoting *Imbler,* 424 U.S. at 430, 96 S. Ct. at 995); *accord Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir. 1999).
>
> Absolute immunity does not depend entirely on a defendant's job title, but involves a functional approach granting immunity based on conduct. *Jones,* 174 F.3d at 1282. This functional approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S. Ct. 2606, 2613, 125 L. Ed. 2d 209 (1993); *accord Imbler,* 424 U.S. at 431 n.33, 96 S. Ct. at 995 n. 33.

Absolute immunity accordingly applies to the prosecutor's actions "in initiating a prosecution and in presenting the State's case." *Imbler,* 424 U.S. at 431, 96 S. Ct. at 995. Prosecutors are immune for appearances in judicial proceedings, including prosecutorial conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause hearing. *Burns v. Reed,* 500 U.S. 478, 490–92, 111 S. Ct. 1934, 1942, 114 L. Ed. 2d 547 (1991); *Kalina v. Fletcher,* 522 U.S. 118, 126, 118 S. Ct. 502, 507–08, 139 L. Ed. 2d 471 (1997); *see also Van de Kamp,* 129 S. Ct. at 861. "A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Jones,* 174 F.3d at 1281. Such absolute immunity also "extends to a prosecutor's acts undertaken ... in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Id.* (quotation marks omitted); *accord Rowe v. City of Fort Lauderdale,* 279 F.3d 1271, 1279–80 (11th Cir. 2002) (holding prosecutor who proffered perjured testimony and fabricated exhibits at trial is entitled to absolute immunity, but a prosecutor who participated in the search of a suspect's apartment is entitled to only qualified immunity).

*Rehberg v. Paulk*, 611 F.3d 828, 837-38 (11th Cir. 2010), *aff'd*, 132 S. Ct. 1497

(2012).

Prosecutors have absolute immunity when "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate ... complaints about the prison system, [and] threatening ... further criminal prosecutions ...." *Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir. 1979); *accord Marx v. Gumbinner,* 855 F.2d 783, 789 n.10, 790 (11th Cir. 1988) (concluding that prosecutors have absolute immunity for rendering legal advice to police officers concerning the existence of probable cause to arrest).

*Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (per curiam) (footnote

omitted).

"If a prosecutor functions in a capacity unrelated to his role as an advocate for the state, he is not protected by absolute immunity but enjoys only qualified

21

immunity." *Rehberg*, 611 F.3d at 838.   However, because Cloy is claiming that Seymore falsified evidence in order to secure charges of Robbery 1st and Burglary 1st from the grand jury, Seymore is clearly entitled to absolute prosecutorial immunity for claims arising from this alleged conduct.   *See id.* at 837-38 ("Prosecutors are [absolutely ]immune for appearances in judicial proceedings, including prosecutorial conduct before grand juries…").   For this reason, as well as the reasons stated in Section V.a., *supra*, the undersigned **RECOMMENDS** that Cloy's claims against Seymore be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(iii), as he is immune from those claims in both his official and individual capacities.

Cloy's claims against Boutwell must also fail.   It is well established that "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the ' "clear absence of all jurisdiction." ' " *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (per curiam) (quoting *Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978)).   *Accord Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (per curiam).   "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin*, 225 F.3d at 1239 (citing *Stump*, 435 U.S. at 356).   "The factors which determine whether an act is judicial 'relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.' " *Scott v. Dixon*, 720 F.2d 1542, 1547 (11th Cir. 1983) (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)).

22

Though Boutwell is not a judge, the Eleventh Circuit has held that a state court clerk's "issuance of a warrant would be a function normally performed by a judge" and is thus a "judicial act" entitling the clerk to absolute judicial immunity for that act. *Id.* *Accord Dykes v. Hosemann*, 776 F.2d 942, 946 (11th Cir. 1985) (en banc) (per curiam) ("[I]n *Scott v. Dixon,* 720 F.2d 1542, 1546-47 (11th Cir. 1983), *cert. denied,* 469 U.S. 832, 105 S. Ct. 122, 83 L. Ed. 2d 64 (1984), affirming the dismissal of a claim against a court clerk, we held that judicial immunity would be assumed despite the appellants' assertion that the court clerk and another defendant conspired with one another or reached an understanding concerning a judicial act to be performed."); *id.* at 954 n.2 (Hatchett, J., dissenting) ("Bear in mind that under *Scott v. Dixon,* 720 F.2d 1542 (11th Cir.1983), a court clerk issuing an arrest warrant is acting in a judicial capacity and entitled to absolute immunity."); *Files v. Alexander City, Ala.*, No. 3:14-CV-239-WKW, 2014 WL 2429248, at *7 (M.D. Ala. May 29, 2014) ("Where a court clerk acts pursuant to authority granted by state law and acts on behalf of a court, the clerk is absolutely immune from damages liability when sued under 42 U.S.C. § 1983 because she is performing a judicial function." (citing *Scott*)).

Cloy has made no specific factual allegations against Boutwell in his operative complaint, and from the evidence produced by Sheriff Mack, Boutwell's only relevant involvement in the activities underlying this action is that, in her capacity as a staff member of the Baldwin Circuit Court Clerk, she issued the two February 17, 2012 arrest warrants against Cloy.  Cloy admits as much in his

response to Sheriff Mack's Special Report, claiming he has only stated that Boutwell "signed a worthless instrument." (Doc. 44 at 1). Because this constituted a "judicial act" by Boutwell, she is entitled to absolute judicial immunity on Cloy's claims against her in this action. For this reason, as well as the reasons stated in Section V.a., *supra*, the undersigned **RECOMMENDS** that Cloy's claims against Boutwell be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(iii), as she is immune from those claims in both her official and individual capacities.

### 2.    Sheriff Mack

> As a supervisory official, Sheriff [Mack] is only liable under § 1983 for the unconstitutional acts of his subordinates if he personally participated in the allegedly unconstitutional conduct, or his actions were causally connected to the alleged constitutional deprivation. A causal connection may be shown by evidence of (1) a custom or policy that results in deliberate indifference to constitutional rights, (2) facts that support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so, or (3) a history of widespread abuse that notified the supervisor of the need to correct the alleged deprivation, but he failed to do so.

*Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (per curiam) (internal citation and quotations omitted).

In his sworn affidavit, Sheriff Mack states that he "was not personally involved in the arrest or incarceration of Mr. Cloy" and that he "did not appear at any hearing, provide testimony, or personally participate in any court proceeding related to the probation violation charge against Mr. Cloy or any other charges that may have been brought against him at that time." (Doc. 40-3 at 3-4, ¶¶ 6, 9 [Sheriff Mack Aff.]). Cloy has presented not evidence to rebut this assertion, nor has he

presented argument or evidence showing any sort of "causal connection" between any action by Sheriff Mack and Cloy's alleged constitutional deprivation.

Moreover, "the existence of probable cause defeats a § 1983 malicious prosecution claim." *Grider*, 618 F.3d at 1256. " 'Probable cause' is defined as facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense. Probable cause may exist based on the collective knowledge of law enforcement officials derived from reasonably trustworthy information." *Id.* at 1257 (internal citation and quotations omitted). Moreover, Sheriff Mack has asserted the affirmative defense of qualified immunity.[13] "To receive qualified immunity, an officer need not have actual probable cause, but only arguable probable cause. Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Grider*, 618 F.3d at 1257 (internal citations, quotations, and footnote omitted). "The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs." *Id.*

Here, the undisputed record evidence indicates that Sheriff Mack, having been provided with the two February 17, 2012 writs of arrest issued by the Baldwin County Circuit Clerk, had, at the very least, arguable probable cause to arrest and

---

[13] "The initial inquiry in a qualified immunity case is whether the public official proves 'that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Grider*, 618 F.3d at 1254 n.19 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted)). Cloy does not contest that Sheriff Mack was at all relevant times acting within the scope of his discretionary authority, and the undersigned finds that the record amply supports such a determination.

hold Cloy pursuant to the charges underlying those writs.[14]  Even assuming that the charges underlying those writs were improper, Cloy has presented no evidence indicating that Sheriff Mack was aware or should have been aware of this, and "[a]rresting officers and those responsible for maintaining custody of detainees are not constitutionally required 'to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.' "  *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1562 (11th Cir. 1993) (quoting *Baker v. McCollan*, 443 U.S. 137, 146 (1979)), *opinion modified on other grounds on reh'g*, 15 F.3d 1022 (11th Cir. 1994).[15]

---

[14] Cloy has presented no evidence or argument indicating that Sheriff Mack secured the arrest warrants himself.  *See Carter*, 557 F. App'x at 907 ("[I]n *Kelly v. Curtis,* we held an officer liable for malicious prosecution under § 1983 where she secured an arrest warrant without probable cause, without any discussion of subsequent control over the suspect or further participation in his prosecution. 21 F.3d 1544, 1555 (11th Cir. 1994). Similarly, in *Whiting*[ *v. Traylor*], we held that merely by securing an arrest warrant without probable cause, regardless of subsequent detention, a 'Fourth Amendment violation ... analogous to the tort of malicious prosecution[ ]' occurs. 85 F.3d [581,] 586[ (1996)].").

[15] "The constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) **that terminated in the plaintiff accused's favor**; and (4) caused damage to the plaintiff accused."  *Grider*, 618 F.3d at 1256 (emphasis added) (quotation omitted).  From Cloy's representations in his complaint (Doc. 21) and in his response (Doc. 48) to Sheriff Mack's Special Report, it appears the Robbery 1st and Burglary 1st charges were dismissed by the state.  Accordingly, the undersigned has presumed that the prosecution of those charges terminated in Cloy's favor.  *See Uboh v. Reno*, 141 F.3d 1000, 1006 (11th Cir. 1998) ("[W]e conclude that the dismissal of some charges of the indictment by the prosecutor—notwithstanding Uboh's earlier conviction on other charges set forth in the indictment—constituted termination in favor of the accused for purposes of our preliminary inquiry into the statute of limitations issue raised in this appeal… Having determined that the dismissal of drug charges against Uboh constituted favorable termination against the accused, we resolve that Uboh's claims for malicious prosecution accrued on July 21, 1993, the date on which the district court entered its order of dismissal.").

For these reasons, as well as those stated in Section V.a., *supra*, the undersigned **RECOMMENDS** that Sheriff Mack's motion for summary judgment (Docs. 40, 41, 46) be **GRANTED**.

## VI.   Conclusion

In accordance with the above-stated reasoning, the undersigned **RECOMMENDS** as follows:

1. That Sheriff Mack's motion for summary judgment (Docs. 40, 41, 46) be **GRANTED** and that all claims against him be **DISMISSED with prejudice**;

2. that Cloy's claims against Seymore and Boutwell be **DISMISSED with prejudice**, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(iii), as they are immune from damages in this action; and

3. that final judgment be entered accordingly in favor of all Defendants and against Cloy.

## VII.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.   *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate

Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 22nd day of December 2014.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**